IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BEAU GIGLIO, | CIVIL ACTION NO.: 2:22-CV-02380 |
| PLAINTIFF, | SECTION: L(5) |
| VERSUS | JUDGE: ELDON E. FALLON |
| SHIPYARD SUPPLY ACQUISITION CORPORATION, | MAGISTRATE: MICHAEL B. NORTH |
| DEFENDANT. | |

## ORDER AND REASONS

The Court has before it Plaintiff Beau Giglio's ("Giglio") request for a preliminary injunction enjoining Defendant Shipyard Supply Acquisition Corporation ("Shipyard") from attempting to enforce the challenged Employment Agreement (the "Agreement") between the parties in any venue outside of this pending civil action. Having conducted a Preliminary Injunction Hearing and considered the parties' briefing and the relevant law, the Court rules as follows.

I.  BACKGROUND

This case arises out of an alleged breach of an Employment Agreement that required Giglio to provide ninety days' notice prior to his resignation, contained a non-compete and non-solicitation agreement, and also stipulated that any legal actions were to be filed in state or federal court in Harris County, Texas and be governed by Texas law. R. Doc. 1 at 2, 3. Plaintiff filed this suit for a declaratory judgment relieving him of enforcement of the contract, which he alleges to be over-broad and unenforceable under Louisiana law, in the 24th Judicial District Court for the

Parish of Jefferson, State of Louisiana on July 18, 2022. R. Doc. 2 at 7. Specifically, Giglio alleges that the non-competition, non-solicitation, punitive provision, tolling provision, choice-of-law and choice-of-venue provisions all fail to comply with Louisiana state law. R. Doc. 1-3 at 7-8. Defendant Shipyard Supply Acquisition Corp. ("Shipyard Supply") timely removed the case to this Court based on diversity jurisdiction. R. Doc. 2 at 6.

Plaintiff was granted a temporary restraining order (TRO) in state court enjoining Shipyard Supply from evading Louisiana's prohibition against choice-of-law and venue selection provisions in employment agreements, particularly related to restrictive covenants. R. Doc. 4 at 2. The TRO prevents Shipyard Supply from seeking enforcement of the t Agreement through any other avenue other than this civil action. Giglio requested that the Court to extend the TRO pending the resolution of this case, as he has already begun employment that Shipyard Supply alleges would violate the non-compete clause of the Employment Agreement, which Giglio alleges is unenforceable in Louisiana. R. Doc. 1-3 at 10. The Court extended the TRO through and including September 9, 2022 by consent of the parties and scheduled the a Preliminary Injunction hearing on September 7, 2022 to hear their arguments on whether the Court must apply Louisiana or Texas law to this dispute and whether a preliminary injunction should be issued in place of the TRO. Shipyard Supply argues that Texas law governs this dispute; the challenged provisions in the contract are valid under Texas law; and thus, inter alia, that Giglio cannot show a likelihood of success on the merits of his claim and is not entitled to a preliminary injunction.

## II.   APPLICABLE LAW

A party seeking a preliminary injunction generally must show (1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction is not granted, (3) that the injury outweighs any harm to the other party, and (4) that granting the injunction will not disserve the

public interest. *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019) (citing *Cardoni v. Prosperity Bank*, 805 F.3d 573, 579 (5th Cir. 2015)). The party seeking the preliminary injunction bears the burden of persuasion on all four requirements. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009) (citing *Lake Charles Diesel, Inc. v. Gen. Motors Corp.,* 328 F.3d 192, 195–96 (5th Cir.2003)).

### III.  DISCUSSION

#### A.  Choice Of Law

The threshold question before the Court in determining whether to Plaintiff is entitled to a preliminary injunction against Shipyard Supply's enforcement of the Employment Agreement is whether Texas or Louisiana law must govern the Court's interpretation of the Employment Agreement. In his petition, Giglio requests, inter alia, declaratory relief that "Louisiana law applies to the adjudication of any and all issues and disputes presented herein and the enforceability of the Agreement." R Doc. 1-3 at 10.

As an initial matter, the Agreement contains a choice of law clause dictating that any disputes arising out of the Agreement will be governed by Texas law. R. Doc. 10 at 6. However, in determining which state's law applies in a diversity case, a federal district court applies conflicts of law principles of the forum state: here, Louisiana. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Louisiana law provides that that a choice of law clause in an employee's contract is null and void unless ratified by the employee after the occurrence of an incident that is the subject of the dispute. *See* La. Rev. Stat. § 23:921(A)(2). The parties do not dispute that Giglio did not ratify the instant choice of law clause. *See* R. Doc 10 at 5–6; R. Doc 8 at 3. Accordingly, the choice of law clause in the Agreement is null and void.

But this does not end the inquiry. Setting aside the choice of law clause, the Court must still determine whether it must apply Texas or Louisiana law in its analysis of the Agreement. Louisiana's choice of law rule concerning conventional obligations calls for application of the law of the state "whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3537. Louisiana law directs that:

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515[1], as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
>
> *Id.*

Louisiana courts consistently hold that Louisiana has a "strong public policy disfavoring noncompetition agreements." *See, e.g.*, *O'Hara v. Globus Med., Inc.*, 181 So. 3d 69, 84–85 (La.App. 1 Cir. 08/12/15). As the Middle District of Louisiana has articulated, where "there [i]s no ratification [of a choice of law clause following the incident that is the subject of the dispute], enforcement of those clauses would otherwise be contrary to Louisiana's strong public policy." *Waguespack v. Medtronic, Inc.*, 185 F. Supp. 3d 916, 925 (M.D. La. 2016); *see also Restio v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, (E.D. La. Apr. 11, 2007) (applying

---

1 5 La. Civ. Code art. 3515, referenced in La. Civ. Code art. 3537, provides in full:

Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Louisiana conflict of law rules in a diversity action and refusing to apply Maryland choice of law provision in non-competition agreement); *Sentilles Optical Servs., Div. of Senasco, Inc. v. Phillips*, 651 So. 2d 395, 400 (La. App. 2 Cir. 3/1/95) ("Louisiana has an obvious interest in protecting its citizens, employers and employees, against territorially unlimited covenants not to compete[.]").

Other factors also weigh heavily in favor of the application of Louisiana law under Articles 3537 and 3515. Giglio is a Louisiana resident and has been at all times relevant to this dispute. R. Doc. 8 at 2–3. Giglio spent at least 95% of his time working for Shipyard Supply in Louisiana. *Id.* at 3. Giglio signed the Agreement in Louisiana. R. Doc 8 at 3. Additionally, though Shipyard Supply identifies itself as a Texas-based company and seeks to have the Court apply Texas law in this case, it is a corporation registered in Delaware, having offices in both Texas and Louisiana, as well as Alabama. R. Doc. 18 at 4; R. Doc. 10 at 7.

On the other hand, Shipyard Supply argues that Giglio worked at both its Texas and Louisiana locations; that he generated millions in revenue in Texas (as well, it concedes, as in Louisiana); and thus that the Agreement should be governed by Texas law. R. Doc 10 at 7–9. It asserts that Texas has an interest in regulating restrictive covenants designed to protect a Texas company and its competition in Texas and elsewhere along the Gulf Coast, and that the policies of facilitating the orderly planning of transactions and promoting multistate commercial intercourse weigh in favor of Texas because the parties agreed to Texas law in the Agreement. *Id.* at 9. Additionally, Shipyard Supply argues that Gigilo is a "sophisticated party[,]" that he had an opportunity to consult a lawyer before signing the Agreement, and that he received a $925,000 signing bonus for entering into the Agreement. Giglio contested the assertion that this sum constituted a signing bonus at the Preliminary Injunction hearing, arguing that the $925,000 he

received was a good-will payment from his former employer, from whom Shipyard purchased its Louisiana operation, for Giglio's past work in building that company until its sale to Shipyard.

As Giglio points out, Shipyard Supply does not cite a single case wherein a court in Louisiana applied the law of another state to restrictive covenants entered into in Louisiana, by a Louisiana resident employee, for work performed in Louisiana, and which purports to restrict competition in Louisiana. R. Doc. 18 at 2. Given the strong interest Louisiana has repeatedly emphasized in regulating this kind of restrictive covenant, and Giglio's status as a Louisiana resident who worked for Shipyard Supply almost entirely in Louisiana, the Court must apply Louisiana law to the Agreement. *See, e.g.*, *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 529 (E.D.La. 2007) ("The Court finds that Louisiana law governs the interpretation of the Employment Contract given Louisiana's strong public policy disfavoring non-compete contracts, and because the contract was executed in Louisiana by a Louisiana domiciliary working under the contract in this state."); *Smith v. Commercial Flooring Gulf Coast*, 2019-0502 (La. App. 4 Cir. 10/9/19) ("Historically, Louisiana jurisprudence has had a strong public policy against non-compete agreements between employers and employees, strictly construing such agreements against the party seeking enforcement.").

### B. Preliminary Injunction

#### a. Likelihood of Success on the Merits

The noncompete clause in the Agreement which Plaintiff seeks to have declared invalid is facially contrary to Louisiana law. *See* La. Rev. Stat. § 23:921(B). Under Louisiana law, it is insufficient for an agreement to use broad language referencing any place where a company does business: to comply with Louisiana law, an agreement must specify the exact parishes, counties,

or municipalities where competition and customer solicitation are prohibited. R. Doc. 2 at 40. The Agreement purports to restrict competition outside of Louisiana "within (i) the geographic area composed of a two hundred (200) mile radius of each of the offices of the Company Group outside of Louisiana…" *Id.* This clause does not state with specificity the areas to which competition is prohibited, and thus fails to be enforceable on its face under the Louisiana statute. *Id.*

Shipyard Supply does not argue otherwise; however, it argues that the Court should apply Texas law to the portion of the noncompete clause restricting Plaintiff in Texas, even if it finds that it must apply Louisiana law in its analysis of the Agreement, citing to the concept of "dépeçage[.]" R. Doc 10 at 10. Dépeçage allows a court to use an issue-by-issue analysis to determine the appropriate state law to apply to different issues. *Id.* But, as Giglio notes, if the Court determines that it must interpret the Agreement under Louisiana law, then there is only one salient issue: whether the noncompete clause in Mr. Giglio's employment agreement complies with La. Rev. Stat. § 23:921. R. Doc. 18 at 6. Shipyard Supply cites to no cases wherein any court has applied the concept of dépeçage to hold that a noncompetition provision seeking to limit a Louisiana's resident's ability to work is governed by Louisiana law but only as to those restrictions within Louisiana. *Id*. This doctrine, which is rarely applied, typically appears in product liability and mass tort matters, and is "more readily applied in cases where strict application of the most obvious law would work an injustice against one of the parties." *Galapagos Corporacion Turistica Galatours, S.A. v. Panama Canal Comm'n.,* 190 F. Supp. 2d 900, 907 (E.D. La. 2002) (internal quotation marks and citation removed). The Court does not find that this is such a case.

Accordingly, applying Louisiana law to this dispute, the Court finds that Giglio has a strong likelihood of success on the merits of his request for declaratory judgment holding the challenged portions of the Agreement unenforceable.

### b. Irreparable Injury

Plaintiff alleges that he need not show irreparable harm in this case to be entitled to a preliminary injunction, pointing out that when a constitutional right is at issue or the conduct sought to be restrained is illegal, a plaintiff need not show irreparable harm to obtain injunctive relief. R. Doc. 1-4 at 7 (citing *Hill v. Jindal*, 2014-1757 (La. App. 1 Cir. 6/17/15)). Given that the noncompete clause which Shipyard Supply seeks to enforce against Giglio is facially in violation of Louisiana law, and thus unlawful, the assertion that he need not show irreparable harm appears to be correct. Nevertheless, Plaintiff does allege that he faces irreparable harm from being forced to litigate in Texas and being unable to continue earning a living in his industry. *Id.* at 42. He argues that should Shipyard Supply seek to enforce the Agreement against him in Texas court, "[t]hroughout the process, uncertainty would remain surrounding the Texas court's potential rulings on these matters and whether Mr. Giglio would be able to return to work during these proceedings. Eventually, should a Texas state court rule that . . . Texas law applies, Mr. Giglio will be unable to earn a livelihood in Louisiana, the state in which he has always lived and worked in his industry." R. Doc 1-4 at 8–9; *see also Terral v. AG Res. Holdings, LLC*, So. 3d 1009, 1015 (La.App. 2 Cir. 03/09/22) (finding that enforcement of an overbroad restraint on trade that does not comply with La. Rev. Stat. § 23:921 "would undoubtedly cause the plaintiff to experience an irreparable injury, which encompasses an immeasurable loss of good will and competitive edge . . ."). Accordingly, the Court holds that Giglio had adequately alleged that in the absence of a preliminary injunction he would experience irreparable injury.

### c. Harm to Other Party

Shipyard Supply argues that a preliminary injunction might cause it more harm than any injury threatened to Giglio if one is granted. R. Doc 10 at 23. It notes that Giglio received $925,000 as his signing bonus with Shipyard Supply, and states that "Mr. Giglio should not be able to profit from that substantial sum of money, and then turn around and compete with Shipyard Supply by stealing its customers and interfering with its vendor relationships shortly after leaving its employ." *Id.* But Shipyard has presented no evidence indicating that this sum was in fact a 'signing bonus' paid to Giglio in consideration for signing the contested Agreement, or even that that payment came from Shipyard itself; Plaintiff represents that the $925,000 he received was a good-will payment from his former employer, from whom Shipyard purchased its Louisiana operation, for Giglio's past work in building that company until its sale to Shipyard. Additionally, Plaintiff's new position is as a sales representative of manufacturers of industrial products, rather than of a distributor like Shipyard Supply, and thus does not purport to be in direct competition with Defendant. Accordingly, the Court finds that the potential harm to Giglio should Shipyard Supply be able to attempt to enforce the Agreement in Texas court outweighs any speculative harm being unable to do so pending resolution of this matter may cause Shipyard.

### d. Public Interest

As discussed in greater detail *supra*, Louisiana has a strong interest in regulating restrictive covenants as expressed by the Louisiana courts and in La. Rev. Stat. § 23:921. Accordingly, the Court finds that granting a preliminary injunction in this case will not disserve the public interest.

### IV. CONCLUSION

For the foregoing reasons, the Court holds that Louisiana law applies to this dispute, and that under the application of Louisiana law, Giglio is entitled to a preliminary injunction enjoining any

attempt by Shipyard to enforce the challenged provisions of the Employment Agreement against him outside of the instant civil action. Accordingly, Giglio's request for a preliminary injunction pending decision in this case is **GRANTED.**

**IT IS THEREFORE ORDERED** that a **PRELIMINARY INJUNCTION** is hereby entered, to take immediate effect, and that Shipyard, and all those persons and/or entities acting in concert with it, is **ENJOINED** from seeking to enforce Mr. Giglio's Shipyard employment agreement, outside of this proceeding, against Mr. Giglio and/or his new employer(s). Further, Shipyard is **ENJOINED** from initiating or proceeding with any legal proceedings against Mr. Giglio arising from, or related in any way to, his Shipyard employment agreement outside of this proceeding, specifically including any such proceedings in Harris County, Texas.

**IT IS FURTHER ORDERED** that this **PRELIMINARY INJUNCTION** shall remain in full force and effect until a final decision on the merits.

**IT IS FURTHER ORDERED** that the parties shall submit a short joint status report, <u>within seven days of the entry of this order</u>, providing the Court with a proposed summary judgment briefing schedule, which shall include: (i) the parties' position(s) as to whether additional briefing is necessary in light of the Court's decision to apply Louisiana law; (ii) whether additional briefing is necessary in light of the briefing and exhibits already before the Court; (iii) what, if any, discovery is necessary in connection therewith; and (iv) proposed page limitations of any opening briefs, response briefs, and/or reply briefs.[2]

---

2  In the event the parties do not agree on any of these issue(s), the parties can note their separate positions.

New Orleans, Louisiana this 7th day of September, 2022.

_____
UNITED STATES DISTRICT JUDGE