IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BEAU GIGLIO, | CIVIL ACTION NO.:   2:22-CV-02380 |
| PLAINTIFF, | SECTION:   L(5) |
| VERSUS | JUDGE:   ELDON E. FALLON |
| SHIPYARD SUPPLY ACQUISITION CORPORATION, | MAGISTRATE:   MICHAEL B. NORTH |
| DEFENDANT. | |

## ORDER AND REASONS

The Court has before it dueling requests for declaratory relief that various provisions of Employment Agreement between the parties, Beau Giglio and his former employer, Shipyard Supply Acquisition Company, are either enforceable or unenforceable. Having considered the parties' briefing and the applicable law, the Court rules as follows.

## I.   BACKGROUND

This case arises out of an alleged breach of an Employment Agreement (the "Agreement) that required Giglio to provide ninety days' notice prior to his resignation, contained a non-compete and non-solicitation agreement, and also stipulated that any legal actions were to be filed in state or federal court in Harris County, Texas and be governed by Texas law. R. Doc. 1 at 2, 3. Plaintiff filed this suit for a declaratory judgment relieving him of enforcement of the contract, which he alleges to be over-broad and unenforceable under Louisiana law, in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana on July 18, 2022. R. Doc. 2 at 7. Specifically, Giglio alleged that the non-competition, non-solicitation, punitive provision, tolling

provision, choice-of-law and choice-of-venue provisions all fail to comply with Louisiana state law. R. Doc. 1-3 at 7-8. Defendant Shipyard Supply Acquisition Corp. ("Shipyard Supply") timely removed the case to this Court based on diversity jurisdiction. R. Doc. 2 at 6. Along with its Answer, R. Doc. 11, Shipyard Supply filed counterclaims against Giglio, seeking a declaratory judgment that all provisions of the Agreement were enforceable under Texas law, or, in the alternative, that they were all enforceable under Louisiana law. *Id.* at. 20–21. Shipyard Supply also alleged that Giglio had violated the Agreement by failing to provide ninety days' notice of the termination of his employment with Shipyard Supply, and requested damages for this breach, as well as attorneys' fees under the provision of the Agreement stating that the prevailing party in any proceeding brought pursuant to the Agreement would be entitled to recover reasonable attorneys' fees from the other party. *Id.* at 21–22.

Prior to removal, Plaintiff was granted a temporary restraining order (TRO) in state court enjoining Shipyard Supply from evading Louisiana's prohibition against choice-of-law and venue selection provisions in employment agreements, particularly related to restrictive covenants. R. Doc. 4 at 2. The TRO prevented Shipyard Supply from seeking enforcement of the Agreement through any avenue other than this civil action. Giglio requested that this Court to extend the TRO pending the resolution of the case, as he has already begun employment that Shipyard Supply might allege would violate the non-compete and/or non-solicitation clauses clause of the Agreement, which Giglio alleged are unenforceable under Louisiana law. R. Doc. 1-3 at 10. The Court extended the TRO through and including September 9, 2022 by consent of the parties and then held a Preliminary Injunction hearing on September 7, 2022 to hear their arguments on whether the Court must apply Louisiana or Texas law to this dispute and whether a preliminary

injunction should be issued in place of the TRO. Following that hearing the Court granted the requested preliminary injunction pending resolution of this case.

It was necessary to first determine the law of which state applied: Texas or Louisiana. In its Order and Reasons, R. Doc. 20, the Court held that it must apply Louisiana law, not Texas law, to determine whether the non-competition and non-solicitation clauses in the Agreement was enforceable against Giglio. *Id.* at 6. It held that that Giglio had a strong likelihood of success on the merits of his request for declaratory judgment that the portions of the Agreement which he challenged were unenforceable under Louisiana law. *Id.* at 7. Accordingly, the Court granted the request for a preliminary injunction.

Thereafter, the Court ordered the parties to submit a joint status report indicating, *inter alia*, the parties' positions as to whether additional briefing was necessary in light of the Court's decision to apply Louisiana law to the portions of the Agreement which Giglio challenged, and whether additional briefing was necessary in light of the briefing and exhibits already before the Court. *Id.* at 10. Because the parties' stances differed starkly, *see* R. Doc. 23, the Court held a telephone status conference to discuss these issues. R. Doc. 25. Thereafter, it ordered the parties to submit briefing on two narrow issues: (1) Whether, with the Court having determined that Louisiana law applies in full to the non-compete and non-solicitation clauses of the Agreement, those provisions or any portion of them are nonetheless enforceable under Louisiana law; and (2) whether Texas or Louisiana law applies to any other provisions of the Agreement germane to Plaintiff's claim and/or Defendant's counterclaim,[1] and whether those provisions are enforceable under the applicable law. *Id*.

---

1 Giglio points out in his supplemental briefing, R. Doc. 28, that the Court wrote in its prior Order and Reasons, R. Doc. 20, that it "must apply Louisiana law to the Agreement." However, the Court stated this within the context of

Shipyard Supply submitted the requested briefing on September 30, 2022, R. Doc. 26 to which Giglio responded on October 11, 2022, R. Doc. 28. Shipyard Supply argues that (1) the non-compete and non-solicitation clauses are enforceable under Louisiana law; (2) the Court should apply Texas law to the confidentiality provision in the Agreement, but that it is enforceable under either Texas or Louisiana law; and (3) the Court should apply Texas law to the provision in the Agreement requiring Giglio to provide ninety days' notice of the termination of his employment with Shipyard Supply, but that it is enforceable under either Texas or Louisiana law. R. Doc. 26 at 1–10. Giglio responds in opposition that (1) the non-compete and non-solicitation clauses are not enforceable under Louisiana law, (2) neither the confidentiality provision nor the 90-days-notice provision are at issue in this case; and (3) the Court should grant declaratory relief that the "punitive provision" of the Agreement, which purports to permit Shipyard Supply to terminate any discretionary or non-vested entitlements or compensation of any kind being paid to Giglio in the event of any breach or threatened breach of the non-compete and non-solicitation clauses, is unenforceable as in violation with Louisiana law, specifically the Louisiana Wage Payment Act La. R.S. 23:631. R. Doc. 28 at 3–10.

## II.   DISCUSSION

---

discussing Louisiana's strong interest in regulating restrictive covenants such as the non-compete and non-solicitation clauses contained in the Agreement. R. Doc. 20 at 6. The Court performed no analysis in its prior Order and Reasons of whether a similar strong interest dictated the application of Louisiana law to other portions of the Agreement, and accordingly did not hold at that time that Louisiana law must apply to all provisions of the Agreement. It is true that the Court rejected Defendant's argument, citing the concept of "dépeçage," that the Court might apply Louisiana law to the portion of the Agreement purporting to restrict Giglio's competition in Louisiana, and Texas law to the portion of the Agreement purporting to restrict Giglio's competition in Texas. *Id.* at 7. However, in doing so, the Court held that "dépeçage" did not permit it to analyze different parts of individual clauses in part under Louisiana law and in part under Texas law. The Court did not address in its prior Order and Reasons whether "dépeçage" allowed it to apply Louisiana law to the non-compete and non-solicitation clauses and Texas law to other provisions of the Agreement.

a. **Are the non-compete and non-solicitation clauses enforceable under Louisiana law?**

Shipyard supplies argues that the non-compete and non-solicitation clauses comply with Louisiana law and can therefore still be enforced against Giglio. However, Louisiana jurisprudence teaches us that we must strictly construe such arguments against the party seeking enforcement. *See, e.g.*, *Smith v. Commercial Flooring Gulf Coast*, 2019-0502 (La. App. 4 Cir. 10/9/19).

La. Rev. Stat. § 23:921(L) indicates that for a non-competition or non-solicitation agreement to be enforceable under that statute, it must, *inter alia*, be confined to an agreement to "refrain from carrying on or engaging in a business similar to that of the limited liability company and from soliciting customers of the limited liability company[.]" *See also Yorsch v. Morel*, 16-662 (La. App. 5 Cir. 7/26/17), 223 So. 3d 1274, 1285, *writ denied*, 2017-1475 (La. 11/13/17). When not so confined, such a non-competition or non-solicitation clause is overbroad, and thus unenforceable. Here, as Plaintiff points out, the non-compete provision prohibits Giglio from engaging "in the same or similar business as the *Company Group*, including without limitation those engaged in the same or similar business as the *Company Group*, including without limitation those engaged in the *Business*." R. Doc. 10-1 at 10 (emphasis added). It also purports to prohibit Giglio from "rendering services" to a company "in the same or similar business as the Company Group." *Id.* at 11; *see Yorsch,* 223 So. 3d at 1286 ("The breadth of this prohibition is so far-reaching that [defendant] could not get a job babysitting for an employee of a company that competes in any way with the "Business" or the "Opportunity.""); *Advanced Medical Rehab, L.L.C. v. Maton*, 21-315 (La. App. 5 Cir. 2/23/22), *reh'g denied* (Mar. 10, 2022), *writ denied sub nom. Advanced Med. Rehab, L.L.C. v. Manton*, 2022-00606 (La. 6/1/22), 338 So. 3d 494.

Shipyard Supply's argument that because "Mr. Giglio knows and understands [it]'s business" it need not define these terms, R. Doc 10 at 20, is unavailing. The Employment agreement itself claims that these terms are defined in a "Purchase Agreement" and are incorporated by reference into the Agreement. *See* Exhibit 1, ¶ 5.a. Shipyard Supply does not contest Giglio's assertion that he was never provided with nor has he ever reviewed a copy of this purchase agreement, nor has anyone at Shipyard Supply ever explained to Giglio what those terms meant as used in his employment agreement. *See* Giglio Dec. ¶ 16–17. Accordingly, because the relevant terms identifying the "Company Group" and the "Business" are not defined in the Agreement, there is no argument that Giglio had knowledge of their definitions as provided in the elusive Purchase Agreement, and because the Court must construe the non-compete and non-solicitation clauses against Shipyard Supply, the Court holds that that those clauses are overbroad and unenforceable under Louisiana law both as to customers and vendors.

   b.  **Are there any other provisions of the Agreement germane to Plaintiff's claim and/or Defendant's counterclaim? If yes, does Texas or Louisiana law apply to them, and are they enforceable?**

      i.  **The Confidentiality Clause**

Shipyard Supply asks the Court to hold that the confidentiality clause contained in the Agreement is enforceable under either Louisiana or Texas law. However, as Giglio points out, the confidentiality provision is not at issue to either Plaintiff's claim or Defendant's counterclaim. *See* R. Doc. 28 at 8. Giglio does not seek a declaration that the confidentiality provision is invalid, and Shipyard Supply asserted no counterclaim with respect to the confidentiality clause. Accordingly, the Court agrees with Plaintiff that the confidentiality clause is not at issue here and declines to address its enforceability under either Louisiana or Texas law.

### ii.   The Punitive Provision

In his initial complaint, Plaintiff sought declaratory judgment also that a "punitive provision" in the Agreement was unenforceable. R. Doc. 1-3 at 5. This punitive provision states that Shipyard Supply may terminate any discretionary or non-vested entitlements or compensation of any kind being paid to Giglio in the event of any breach or threatened breach of the non-compete and non-solicitation clauses. Exhibit 1, ¶ 7.g. Giglio argues that this provision is unenforceable under the Louisiana Wage Payment Act La. R.S. 23:631. R. Doc. 28 at 3–10.

The Court declines to address this argument as well. The punitive provision may apply only upon breach or threatened breach of the non-compete and non-solicitation clauses. Having held that the non-compete and non-solicitation clauses are unenforceable, it is plain that those clauses cannot be breached. Accordingly, this dispute is moot.

### iii.   The 90-day-notice Clause

The Agreement states that the Employee must provide the Employer with 90 days' notice of his desire to leave the Company's employ. *See* R. Doc. 11 at 19. In its counterclaim, Shipyard Supply asserts that Giglio breached the Agreement by failing to provide this notice. *Id.* at 22. Giglio argues in response only that this pending counterclaim does not prevent the Court from granting a declaratory judgment in his favor as he has requested. R. Doc. 28 at 8–9. This is true. *See, e.g.*, *O'Sullivan v. Gupta*, No. 17-609, 2017 U.S. Dist. LEXIS 126943 (E.D.La. Aug. 10, 2017); *Affordable Roofing, Siding, & Gutters, Inc. v. Artigues*, No. 16-16872, 2017 U.S. Dist. LEXIS 25110, at *2-9 (E.D.La. Feb. 22, 2017). However, this argument does not address the enforceability of the 90-day-notice clause.

Shipyard Supply argues that the 90-day-notice clause is enforceable under either Louisiana or Texas law. The Court agrees. Texas law recognizes a provision requiring an employee to give an employer notice before terminating an employment agreement. *See, e.g.*, *Allied Mortg. Capital Corp. v. Advantage Inv'rs Mortg. Corp.*, No. 14-07-00170-CV, 2008 WL 4547358, at *3 (Tex. App.—Houston [14th Dist.] Oct. 14, 2008, no pet.). Louisiana law also recognizes a provision requiring notice before terminating an employment agreement. *See, e.g.*, *Seals v. Calcasieu Par. Voluntary Council on Aging, Inc.*, 1999-1269, p. 15 (La. App. 3 Cir. 3/1/2000), 758 So. 2d 286, 294 (finding valid a provision in an employment agreement providing the employee give 30-day's notice before terminating the employment agreement). Accordingly, the 90-day-notice provision is enforceable, and Shipyard Supply can thus proceed with its counterclaim and seek damages for Mr. Giglio's failure to provide 90 days' notice of his intent to leave Shipyard Supply's employ. However, the Court expresses no opinion on the actual merits of that claim at this time.

III.    **CONCLUSION**

For the foregoing reasons, Plaintiff's request for declaratory judgment is **GRANTED**. The Court holds that the non-compete and non-solicitation clauses, which must be analyzed under Louisiana law, are unenforceable. Accordingly, Mr. Giglio is not restricted in any capacity by those unenforceable clauses. Because those clauses are unenforceable, they cannot be breached; therefore, Plaintiff's request for declaratory relief that the "punitive provision" of the Agreement which he worries Shipyard Supply might seek to enforce against him upon a breach or threatened breach of the non-compete and non-solicitation clauses, is moot.

As to Shipyard Supply's request for declaratory relief, the Court has held that the confidentiality clause is not germane to either Plaintiff's claim or Defendant's counterclaim. Therefore, the Court declines to address Shipyard Supply's arguments with reference to that claim.

However, because the 90-day-notice clause is enforceable under either Texas or Louisiana law, Shipyard Supply may proceed in its counterclaim for damages against Giglio under that clause.

**IT IS SO ORDERED**.


New Orleans, Louisiana this 17th day of October, 2022.


UNITED STATES DISTRICT JUDGE